IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JEREMIAH N. MAGERS and
ANDREA J. MAGERS,

      Plaintiffs,

v.                                        Civil Action No. 5:12CV49
                                                   (STAMP)

CHESAPEAKE APPALACHIA, LLC
CNX GAS COMPANY, LLC and
COLUMBIA GAS TRANSMISSION, LLC,

      Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT CNX GAS COMPANY, LLC'S MOTION TO DISMISS**

I.  Procedural History

The plaintiffs, Jeremiah Magers and Andrea J. Magers
("Magers"), commenced this action by filing a complaint in the
Circuit Court of Marshall County, West Virginia.  The complaint
sought damages against Chesapeake Appalachia, LLC ("Chesapeake")
for the alleged contamination of the Magers' well with methane, and
the subsequent diminution in the value of their home, which the
plaintiffs claimed are a result of the Chesapeake's drilling
operations on lands adjacent to the Magers' home.  The complaint
claimed that Chesapeake violated §§ 22-6-30, -7-3 of West Virginia
Code and Chesapeake's mining permit.  The plaintiffs asked for
compensatory and punitive damages due to the alleged methane
contamination.

Chesapeake removed the case to this Court claiming diversity
jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441(a).  The

plaintiffs then filed a motion to amend their complaint. This motion was granted and the amended complaint added CNX Gas Company, LLC ("CNX") and Columbia Gas Transmission ("Columbia") as defendants. This amended complaint only varied from the original complaint in that it alleged that CNX's shallow gas wells and Columbia's gas storage field also caused methane contamination of their well. Columbia submitted a motion to dismiss which, after full briefing, was denied. The Court did, however, grant defendant Columbia's alternate motion which required the plaintiffs to file a more definite statement. The plaintiffs submitted their more definite statement, which added several details to their original allegations and an additional allegation of a West Virginia Code § 22-6B-3 violation committed by Chesapeake, but relied on primarily the same legal arguments.

CNX then filed a motion to dismiss. This motion argues that the amended complaint and more definite statement impermissibly relied on legal conclusions, and that the plaintiffs' legal theory was inapplicable. This prompted a memorandum in opposition by the plaintiffs that argues that their pleadings put forth sufficient claims under sound legal theories. The reply brief by defendant CNX again argues that plaintiffs cannot state a cause of action under the cited laws. For the reasons that follow, this Court will grant the defendants' motion to dismiss.

## II.  Applicable Law

When assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pled facts contained in the complaint as true.  _Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc._, 591 F.3d 250, 255 (4th Cir. 2009).  However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes."  _Id._ (citing _Ashcroft v. Iqbal_, 129 S. Ct. 1937, 1949 (2009)).  This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments." _Wahi v. Charleston Area Med. Ctr., Inc._, 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case.  5B Charles Alan Wright & Arthur R. Miller, _Federal Practice and Procedure_ § 1356 (3d ed. 1998).  The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact.  _Id._  For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and the

3

court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rules of Civil Procedure 8(a). Id. § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### III.   Discussion

The plaintiffs rely on three statutes, West Virginia Code §§ 22-6, -6B, -7, as the legal basis for their claims. CNX claims that none of these statutes provide the plaintiffs with a cause of action and, therefore, their case should be dismissed. First, the possibility of recovery will be addressed under the text of the statutes. Next, the possibility of recovery under a theory of implied cause of action will be addressed. Finally, this Court will discuss the adequacy of a potential common law claim.

4

A.  <u>Statutory claims based on an explicit cause of action</u>

Article 6B (Oil and Gas Horizontal Well Production Damage Compensation) and Article 7 (Oil and Gas Production Damage Compensation) of Chapter 22 of the West Virginia Code are very similar in their layout and purpose, thus the Court will evaluate them in parallel.  CNX argues that neither of these articles create a cause of action for the Magers because the Magers' land is merely adjacent to the land upon which drilling activities have taken place.  Further, CNX states that the Magers have not claimed that drilling has occurred on their property.  When interpreting a statute, this Court begins, as always, with the text.  At first glance, there is ambiguity in the sections referring to those for whom compensation for polluted waters is available, as they merely reference liability to the "surface owner" for damages as a result of drilling.  W. Va. Code §§ 22-6B-3(a), -7-3(a).  However, the enacted purpose and definition sections for these statutes specify who qualifies as a surface owner and thus who has a right to be compensated.

The legislature enacted purpose sections to supplement the statutes at issue in the instant case.  These purpose sections contain nearly identical wording, which states that the law is intended to protect surface owners of lands where the wells are drilled.  W. Va. Code §§ 22-6B-1(c) ("It is the purpose of this article to provide . . . compensation to surface owners of lands on

which horizontal <u>wells are drilled</u>.") (emphasis added); W. Va. Code §§ 22-7-1(d) ("It is the purpose of this article to provide . . . compensation to surface owners of lands on which oil and gas <u>wells are drilled</u>.") (emphasis added).

Both statutes also provide definitions for what constitutes a surface estate and a surface owner.  While the definition of surface owner is not directly limited to superjacent landowners, the term surface estate is limited, and it appears the two definitions should be read in concert.  The definition sections define "[s]urface estate" as "an estate in or ownership of the surface of a particular tract of land overlying the oil or gas leasehold <u>being developed</u>."  W. Va. Code §§ 22-6B-2(6), -7-2(5) (emphasis added).  The same sections define a "[s]urface owner" as a person "who owns an estate in fee in the surface of the land." W. Va. Code §§ 22-6B-2(7), -7-2(6).  This definition means, in other words, that a surface owner is an owner of a surface estate. Therefore, the limited scope of surface estates should also apply to surface owners, and surface estates are limited to lands where development is occurring.  From these purpose and definition sections, it can be discerned that these statutes were intended to protect the surface owners overlying mineral estates being developed by oil and gas operators, but not adjacent land owners.

Other courts have recognized the same limitation of surface owners who can recover under Article 7, Chapter 22.  <u>CSX Transp. v.</u>

PKV Ltd. P'ship, 906 F. Supp. 339, 344 (S.D. W. Va. 1995);
Depeterdy v. Cabot Oil & Gas Corp., No. CA-97-966-2, 1999 WL
33229744, at *3 (S.D. W. Va. 1999).  Given that the Magers do not
claim that the drilling is occurring on their land, they cannot
state a claim under West Virginia Code §§ 22-6B and 22-7 against
any of the defendants.

The plaintiffs also claim that recovery is warranted under
West Virginia Code § 22-6-30, which sets forth reclamation
requirements.   Under  the  explicit  language  of  Article  6,
enforcement is left to the Secretary of the Department of
Environmental Protection, known as the "[d]irector" in the statute
and herein.  W. Va. Code § 22-6-1(f).  The specific statute that
the plaintiffs rely on, West Virginia Code § 22-6-30, controls the
reclamation of drilling sites when the drilling process ends and
the well is plugged.  See W. Va. Code § 22-6-30.  It sets out how
the surface should be restored and mentions only the involvement of
the director in this process.  Id.  Further, there is no mention of
a private cause of action for adjacent landowners in regards to
reclamation.  Additionally, the state of the well, and therefore
which requirements are applicable, has not been made clear by
either party.

Finally, the plaintiffs also vaguely reference the duty that
defendants owe them by virtue of their mining permits.  ECF No. 1
¶ 11.  Permits for operating wells are required by West Virginia

7

Code § 22-6-6(a) and the volume and concentration of pollutants discharged by the wells are limited by this permit.  W. Va. Code § 22-6-7(4).  Prosecution of such violations, however, is left solely to the director.  W. Va. Code §§ 22-6-34, -11-22(a) ("Any such civil penalty may be imposed and collected <u>only</u> by a civil action instituted by the director."); <u>see also</u> W. Va. Code St. R. § 47-10-16.2 (allowing public involvement by requiring investigation of and response to complaints addressed to the director).  Further, the director may propose a "mechanism for the administrative resolution of violations" as an alternative to prosecution.  W. Va. Code §§ 22-11-34(b).  Nothing in Chapter 22, Article 6, 6B, or 7 explicitly allows for a private right of action to adjacent surface owners, so the plaintiffs' statutory claims will be sufficient only if a right of action can be implied.

B.   <u>Statutory claims based on an implied cause of action</u>

The plaintiffs have not directly argued that their claims fall under an implied private cause of action.   Their pleadings, however, could be so interpreted and CNX has addressed that issue in their motion to dismiss, claiming that the statutes should not give rise to a private cause of action.   ECF No. 44 *3-4.  The Supreme Court of Appeals of West Virginia determines the applicability of implied private cause of actions under the following four part test:

(1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must

8

be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

Hurley v. Allied Chemical Corporation, 262 S.E.2d 757, 758 (W. Va. 1980).

Recent case law has found that the most important factor in applying Hurley is legislative intent. Fucillo v. Kerner (ex. rel. J.B.), No. 11-1783, 2013 WL 2460731 (W. Va. June 5, 2013). Unfortunately, the legislative history available for the statutes at issue is not substantive. See, e.g., WV H.D. B. Hist., 2012 4th Spec. Sess. H.B. 401. As mentioned above, legislative purpose and findings were written into the text for two of the statutes, W. Va. Code §§ 22-6B-1, -7-1, but not for the reclamation or permit sections, W. Va. Code §§ 22-6-6, -30. Because of this fact, West Virginia Code §§ 22-6B-1, 7-1 will be addressed first.

As explained earlier, West Virginia Code Articles 22-6B and 22-7 are nearly identical statutes and they address compensation to surface owners overlying minerals in the process of development. The legislative purpose sections of Articles 6B and 7 directly address the second factor under Hurley, legislative intent, and also reflect on the first and third factors. See W. Va. Code § 22-6B-1(c) ("It is the purpose of this article to provide . . . compensation to surface owners of lands on which horizontal wells

are <u>drilled</u>.") (emphasis added); W. Va. Code § 22-7-1(d) ("It is the purpose of this article to provide . . . compensation to surface owners of lands on which oil and gas wells are <u>drilled</u>.") (emphasis added).  These sections render the argument that the legislature intended a private cause of action for the plaintiffs untenable.  After all, the beneficiaries of both statutes are expressly limited to exclude adjacent surface owners.  The plaintiffs in this case are undisputedly not the owners of land where the subject drilling is occurring.  Given that the plaintiffs are not members of the class to be benefitted from the legislation and the importance of legislative intent, a private cause of action cannot be implied from West Virginia Code §§ 22-6B or -7 for these plaintiffs.

For the two latter sections, West Virginia Code §§ 22-6-6, -30, legislative intent regarding an implied cause of action should be inferred from their context and composition because explicit sources of intent are lacking.  <u>See</u> <u>Hill v. Stowers</u>, 680 S.E.2d. 66, 74 (W. Va. 2009) (stating that when the legislative history is lacking, the context should be considered).  Under the <u>Hurley</u> test, the first question is whether the plaintiffs are part of a group for which the law was enacted.  The purpose of oil and gas drilling regulation is to promote the environment and economy generally, but not specifically for the benefit of landowners adjacent to drilling operations.  To imply a private cause of action, the beneficiaries

10

must be more specific than the general public.  See A.C.M., Inc. v. Daimer Trucks N. Am., LLC, No. 2:08-0169, 2009 WL 899454, at *7 (S.D. W. Va. Mar. 31, 2009).  In A.C.M., Inc., the relevant statute required car manufacturers and distributors to compensate car dealers for the work required for "preparation, delivery, and warranty service on [their] products."  Id. at *6.  The court found that although this could constitute an intent to benefit consumers "at some level of abstraction," at some level, all statutes should benefit society at large.  Id. at *7.  Adjacent landowners are, at some level of abstraction, the beneficiaries of permitting and reclamation requirements, but it is not clear that they were part of the group intended to be beneficiaries by the legislature.

Historically, statutory and regulatory remedies and concern for surface damage caused by mining operations has focused on the superjacent landowner, who leased the mineral rights to their land to another.  This is because under the common law, surface owners had no right to prevent the mineral rights owner from performing all reasonable mining operations on the land below which mining was taking place, and reasonableness was determined in comparison to industry practice.  Ronald W. Polston, Surface Rights of Mineral Owners—What Happens When Judges Make Law and Nobody Listens?, 63, N.D. L. Rev., 41, 42-43 (1987) (outlining the common law approach).  Reasonableness was also determined without regard to the damages imposed on the surface estate, under a theory of implied easement.

11

Id.  This balance of rights and the various alternatives to it have been the subject of considerable debate, which has resulted in a variety of solutions, created by both courts and legislatures.  See Michelle Andrea Wenzel, The Model Surface Use and Mineral Development Accommodation Act: Easy Easements for Mining Interests, 42 Am. U. L. Rev. 607, 627-647 (1993) (discussing, first, developments by courts and, second, statutory solutions in response to common law mining rights).

The reclamation statute cited by the plaintiffs addresses this balance between the mineral lessor and lessee by requiring minimal standards of restoration as production ends, notwithstanding the reasonableness of such production.  See W. Va. Code §§ 22-6-30.  In the debate regarding compensation for damage to surface estates due to mining operations, a discussion of adjacent landowners' rights has been notably absent.  See Michelle Andrea Wenzel, The Model Surface Use and Mineral Development Accommodation Act: Easy Easements for Mining Interests, 42 Am. U. L. Rev. 607 (1993); Ronald W. Polston, Surface Rights of Mineral Owners—What Happens When Judges Make Law and Nobody Listens?, 63, N.D. L. Rev., 41 (1987).  Considering the historical context, there is little reason to think the legislature had adjacent landowners specifically in mind when enacting these statutes.[1]  The plaintiffs are, therefore,

---

[1]The only section of Article 6 that directly addresses adjacent owners is not relevant to the plaintiffs' claims.  That section allows adjacent owners to recover the costs of sealing an abandoned

not members of a special group of beneficiaries of West Virginia Code § 22-6-6 or -30, under the first <u>Hurley</u> factor.

As previously noted, West Virginia Code Chapter 22, Article 6 lacks a legislative purpose section, and legislative intent, as per the second <u>Hurley</u> factor, must be determined by analyzing the act as a whole. <u>Hurley v. Allied Chemical Corporation</u>, 262 S.E.2d 757, 763 (W. Va. 1980) (explaining that intent may be found in the structure of the statute or the context of enactment). Two features of Article 6 suggest that a right of action was not intended for adjacent land owners: (1) the article primarily protects superjacent landowners and coal operators and (2) the director is already responsible for enforcement. First, several sections within the article benefit the coal operators below the drilling and the landowners above. These groups are given notice of drilling, and the coal operators are allowed to object to drilling and fracturing. W. Va. Code §§ 22-6-9, -13, -15. The legislature considered the impact to these groups and enacted protections for them, but did not explicitly provide similar rights to adjacent landowners.

Second, the director has authority, staff, and duty to both supervise drilling operators and enforce Article 6. This suggests that a private cause of action was not contemplated. <u>See</u> W. Va. Code §§ 22-6-2(a), (c)(2). Finally, Article 6 provides the

_____

well on nearby lands. W. Va. Code § 22-6-32.

director with the power to sue for injunctive relief against violators, and there are civil penalties provided for any willful violations of the article.  Because adjacent landowners do not have many other rights under Article 6 and there are alternative regulatory mechanisms, legislative intent militates against an implied cause of action.

Under the third _Hurley_ factor, the implied cause of action must be evaluated within the legislative scheme.  It seems that Chapter 22, Environmental Resources, and Article 6 specifically are not meant to protect individual property owners, but all citizens of West Virginia.  Further, it would be counter-intuitive for Article 6 to provide for a private cause of action because there are already ways to recover under the common law.  In this case of methane pollution, negligence and nuisance are reasonable theories of recovery.  In fact, it seems recovery under negligence was favored by the legislature through the inclusion of a section which creates the rebuttable presumption that drilling is the proximate cause of fresh water deprivation when the oil and gas well is within 1000 feet of the water source.  W. Va. Code § 22-6-35. Further, violation of a permit or other provisions of Article 6 could potentially be used as part of a _per se_ negligence claim. Considering the alternate means of recovery and their support within the statute, an implied private cause of action would be unnecessary and not compatible with the legislative scheme.

Finally, the fourth <u>Hurley</u> factor is not an issue because the federal government does not exclude the states in the area of environmental protection and compensation.  Given all of the above, under the <u>Hurley</u> test, an implied cause of action cannot be implied for any of the statutes that the plaintiffs claim were violated.

C.   <u>Common law causes of action</u>

The plaintiffs have also argued that their pleadings put forth a negligence claim.  ECF No. 35 *7.  The defendants assert in reply that there was no legal duty supporting this claim and that the facts alleged were insufficient to make liability plausible.  To assert a negligence claim with sufficient specificity, four elements must be alleged: duty, breach, causation, and resultant damages.  5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1249 (3d ed. 2013).  The plaintiffs have, in several instances, pleaded both causation and resultant damage; thus those two factors are not at issue.  <u>See e.g.</u>, ECF No. 15 ¶ 12 ("As a direct and proximate cause of defendant's operations, the plaintiffs have suffered damages . . .").

However, the sufficiency of their duty and breach statements is less apparent.  As regards duty, the main issues are that the plaintiffs state that (1) the defendants' duties arise from statutes and (2) the duty owed is to provide compensation.  <u>E.g.</u>, ECF No. 40 ¶ 27 ("CNX has a duty under West Virginia Code 22-7-3 to compensate Plaintiff[s].").  The common law duty underlying claims

15

of negligence is not based on statute, but a duty of reasonable care to prevent foreseeable harm.  E.g., Matthews v. Cumberland & Allegheny Gas Co. 77 S.E.2d 180, 187 (W. Va. 1953).  Furthermore, it is a duty of care that underlies claims of negligence, not a duty to compensate, as the plaintiffs have stated it.  Sparks v. Chicago & E.I.R. Co., 42 F. Supp. 1019, 1020 (E.D. Ill. 1942) (holding that a duty of an insurer is distinct from a duty of care, thus they can not be interposed during pleading).  For these two reasons, the duty alleged by plaintiffs is incompatible with a claim of negligence.

There is a similar issue with the plaintiffs' statements regarding breach.  The allegation that compensation for the contaminated well has not been paid is mentioned frequently in their pleadings.  E.g., ECF No. 40 ¶ 28.  And yet an explicit statement that the defendants acted negligently is lacking in both the amended complaint and the more definite statement.

There are, however, two alternate methods for stating breach in West Virginia law, res ipsa loquitur and prima facie negligence, which may be relevant.  At one point, the plaintiffs hint at an act of negligence by stating: "As a result of oversaturating its storage field, Columbia has caused the release of fugitive methane gas . . ." ECF No. 40 ¶ 33.  Arguably, this constitutes a set of facts compatible with res ipsa loquitur, as oversaturation would seem most likely to be a result of negligence.  However, because

16

the plaintiffs have alleged that multiple defendants have polluted the ground, it is not clear that elements of <u>res ipsa loquitur</u> could be established.  <u>See</u> <u>Foster v. City of Keyser</u> 501 S.E.2d 165, 185 (W. Va. 1997) (holding that the conduct of third parties as an alternate cause has to be sufficiently eliminated for <u>res ipsa loquitur</u> to be applied).  Regardless of the applicability of <u>res ipsa loquitur</u>, a statement of duty would still be necessary for a plaintiff to recover.

There is also the possibility that <u>prima facie</u> negligence, due to violation of the various statutes cited by the plaintiffs, was alleged.  <u>See e.g.</u>, ECF No. 15 ¶ 15.  Violation of a statute can constitute <u>prima facie</u> negligence "if an injury proximately flows from the non-compliance and the injury is of the sort the regulation was intended to prevent." <u>Miller v. Warren</u>, 390 S.E.2d 207, 208-09 (W. Va. 1990).  For many of the same reasons mentioned above, it is not clear that the statutes the plaintiffs cite were meant to prevent their alleged injury.  This issue, however, is ultimately moot because "[w]here there is no legal duty to take care, there can be no actionable negligence." <u>Reed v. Phillips</u>, 452 S.E.2d 708, 712 (W. Va. 1994).

Therefore, without a clear statement of a legal duty owed to the plaintiffs, the amended complaint and more definite statement fail to give the defendants fair notice of a negligence claim, as required for adequate pleading.  <u>See</u> <u>Powell v. Residential Mortg.</u>

17

<u>Capital</u>, No. C 09-04928JF(PVT), 2010 WL 2133011, at *9 (N.D. Cal. 2010); <u>Twombly</u>, 550 U.S. at 555 (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

V.   <u>Conclusion</u>

For the above reasons, the plaintiffs have failed to state a claim upon which relief may be granted.  Therefore, defendant CNX Gas Company, LLC's motion to dismiss is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:  August 13, 2013


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE