IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JEREMIAH N. MAGERS and
ANDREA J. MAGERS,

     Plaintiffs,

v.                            Civil Action No. 5:12CV49
                                                (STAMP)

CHESAPEAKE APPALACHIA, L.L.C. and
COLUMBIA GAS TRANSMISSION, L.L.C.,

     Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT COLUMBIA GAS TRANSMISSION, L.L.C.'S**
**MOTION FOR SUMMARY JUDGMENT,**
**DENYING AS MOOT DEFENDANT COLUMBIA GAS TRANSMISSIONS, L.L.C.'S**
**MOTION TO EXCLUDE THE TESTIMONY OF JOHN HEMPEL,**
**AND SCHEDULING STATUS AND SCHEDULING CONFERENCE**

## I.  Procedural History

The plaintiffs, Jeremiah N. Magers and Andrea J. Magers, filed a complaint against defendant Chesapeake Appalachia, L.L.C. ("Chesapeake") in the Circuit Court of Marshall County, West Virginia. The case was then removed to this Court by Chesapeake pursuant to diversity jurisdiction. During discovery, the plaintiffs discovered evidence that led them to file a motion to amend the complaint in order to join CNX Gas Company, L.L.C. ("CNX") and Columbia Gas Transmission, L.L.C. ("Columbia"). The motion to amend was granted by this Court. In their amended complaint, the plaintiffs claim that the defendants' drilling related activities on a tract of property adjacent to their own resulted in the contamination of their drinking well water.

Thereafter, Columbia filed a motion to dismiss or in the alternative, a motion for a more definite statement. This Court denied Columbia's motion to dismiss but granted its motion for a more definite statement. The plaintiffs filed a more definite statement in accordance with that order. In response, CNX filed a motion to dismiss arguing that the plaintiffs could not assert a claim against it under West Virginia Code § 22-7-1 <u>et seq.</u> This Court granted CNX's motion to dismiss and CNX was terminated as a party to this action.

Ten days after that judgment, the plaintiffs filed a motion for reconsideration of the judgment dismissing CNX as a party defendant. The plaintiffs later filed a motion to amend their complaint. This Court denied the plaintiffs' motion to alter or amend the judgment and granted in part the plaintiffs' motion for leave to file an amended complaint as it pertained to defendants Chesapeake and Columbia and denied that motion in part as moot as it pertained to CNX.

Thereafter, the parties filed joint stipulations dismissing Counts II and III of the complaint against Columbia. The parties' stipulation to dismiss Count II, however, came after Columbia filed its motion for summary judgment and had already briefed the issues as to Count II. This Court approved both stipulations, thus the only remaining count against Columbia is Count I, a negligence claim.

## II. Background[1]

In its motion to exclude testimony, Columbia asserts that John C. Hempel ("Hemple") conducted a geological investigation of the plaintiffs' property in 2009 before Columbia and CNX were named as parties. Columbia also indicates that at Hempel's deposition, Hempel had only reviewed his own data from 2009 and the expert disclosures of Columbia's expert, Dr. Robert W. Chase. Further, Columbia states that Hempel was unable to testify that the source of the contamination was Columbia and that he was only able to testify that he would need more information to opine, with a reasonable degree of professional certainty, as to whether the actions of any of the defendants resulted in the damage to the plaintiffs' property.

In its motion for summary judgment, Columbia first argues that the plaintiffs have not shown by a preponderance of the evidence that Columbia caused the damages underlying this action because the plaintiffs have admitted (1) that the test results from their water well show different gas than that present in Columbia's gas wells, and (2) that they have no personal knowledge of over-saturation or injection of water or other chemicals by Columbia which caused the

---

[1]The background below will not review the parties' arguments as to <u>Daubert v. Merrel Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (2003), as this Court finds that the motion to exclude is moot because the Court is granting Columbia's motion for summary judgment and thus the application of <u>Daubert</u> does not need to be considered at this time.

release of methane gas or other contaminants. Further, Columbia argues that the plaintiffs' only support for causation is dependent on their expert testimony and report. Columbia argues that for the reasons set forth in their motion to exclude testimony, Hempel cannot testify that Columbia is more likely than not the cause of the contamination. On the other hand, Columbia indicates that both its expert and Chesapeake's expert, Anthony W. Gorody ("Gorody"), have conducted fingerprint analysis of the water well and gas samples from Chesapeake and Columbia. Columbia argues that its expert has shown that the gas samples from Columbia and the plaintiffs' wells are different and thus Columbia is not a cause. Further, Columbia asserts that Gorody's report, to exculpate Chesapeake, concludes that the contaminant in the plaintiffs' water well is biogenic in origin and not related to gas production. Additionally, Columbia contends that insofar as Gorody's report may implicate Columbia, Gorody did not review Columbia's gas samples and thus it cannot be used to implicate Columbia.

In response, the plaintiffs argue that there is a genuine issue of material fact as to whether Columbia over-saturated its storage field or dropped the pressure so low as to create the fractures below the plaintiffs' well that were reported by Hempel in 2009. The plaintiffs contend that they do not have to show by a preponderance of the evidence that Columbia was the sole proximate cause of the injury but merely need to show that Columbia

is a proximate cause, which they argue may not be shown by the fingerprinting done by Gorody and Chase. To support the last assertion, the plaintiffs cite to Hempel's testimony that the gases may have intermixed and thus fingerprinting is not reliable. Further, the plaintiffs argue that Columbia should not be able to use the admissions by the plaintiffs because they are laymen who would not understand the science that went behind Columbia's questions.

The plaintiffs further contend that (1) Hempel's testimony should not be excluded for being untimely and (2) Hempel's testimony should not be excluded because the scheduling order has been vacated. The plaintiffs indicate that they requested additional information from Columbia, after Hempel's deposition, that will assist him to make a more conclusive finding based on the data. The plaintiffs then concede, however, that Hempel's analysis is not complete but that his theories should not be prematurely discarded before he can fully apply them to the data that has been collected thus far in this case.

The plaintiffs next argue that the information sought by Hempel, which was requested by the plaintiffs after his deposition, is significantly important to his testimony. The plaintiffs have requested pressure logs from Columbia and the plaintiffs assert that these are needed in order for Hempel to make a determination of whether Columbia was a cause to a reasonable degree of

professional certainty. The plaintiffs then assert that there is ample time to continue the discovery deadlines because this Court has vacated the scheduling order and there are no deadlines at this time. Thus, the plaintiffs argue that discovery is incomplete at this time, that the additional discovery they asked for (the pressure logs) was not untimely because the scheduling order has now been vacated, and thus summary judgment would be premature.

Finally, contrary to Columbia's assertion that they have had four years, the plaintiffs assert that counsel for the plaintiffs has had less than two years to consider Columbia's part in this action because the plaintiffs had originally brought this suit with another firm and thus, there was no purposeful delay. As to their final argument, the plaintiffs contend that because there is no scheduling order and parties are, under Federal Rule of Civil Procedure 26, governed by the 90-day rule (expert disclosures must be completed 90 days before the trial date), they are still within that window even though those deadlines had passed in the vacated scheduling order. Further, they argue that it would be disingenuous for Columbia to argue otherwise as it filed a motion for summary judgment after the deadline for such a motion had passed in the vacated scheduling order.

In its reply, Columbia asserts that the plaintiffs did not provide a complete statement of all opinions of Hempel and that this failure is not a harmless error. Columbia argues that

although an expert may in some circumstances supplement what was provided in disclosures, it cannot be done in this case where the future testimony is hypothetical and the plaintiffs have had ample time to complete discovery. Additionally, Columbia argues that Hempel's testimony will be crucial and likely contested, thus it should not be allowed because the plaintiffs chose to wait until it was too late to request necessary documents. Because of the problems with Hempel's testimony, Columbia asserts that his testimony should be excluded, or in the alternative, should be limited to what was disclosed in his 2009 report.

Columbia then argues that because Hempel's testimony cannot be used, and has not been fully developed, the plaintiffs have failed to prove causation. As to the plaintiffs' claims that over-saturation is a disputed material issue, Columbia argues that Hempel has been unable to testify as to saturation, thus, his testimony as to that subject should not be admissible. Thus, because this assertion is also unsupported, the plaintiffs have failed to prove causation. Columbia contends that in order to request additional discovery, the plaintiffs were required to submit a Rule 56(d) affidavit or declaration to demonstrate to this Court that the plaintiffs cannot present facts essential to justify denying summary judgment–they have not. Further, Columbia argues that even without the Rule 56(d) affidavit/declaration, the plaintiffs have not shown that they diligently pursued discovery

before the summary judgment motion was made. Columbia indicates that there have been several rounds of discovery and it would be greatly prejudiced by an extension because of the significant costs to date of conducting discovery, preparing reports, taking depositions, and filing for summary judgment. Moreover, Columbia notes that the plaintiffs had nine months under the previous scheduling order which was vacated after discovery had closed and must now deal with the consequences of not acting sooner and preparing a full expert case.

For the reasons set forth below, this Court finds that Columbia's motion to exclude expert testimony is denied as moot and Columbia's motion for summary judgment is granted.

### III. Applicable Law

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but

8

. . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

Further, summary judgment is generally appropriate only after adequate time for discovery. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996). "[S]ummary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Anderson, 477 U.S. at 250 n.5. However, "great weight [is placed] on the [Federal Rule of Civil Procedure] Rule [56(d)] affidavit, believing that a party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirements of Rule [56(d)] to set out reasons for the need for discovery in an affidavit." Evans, 80 F.3d at 961. In reviewing the supported

9

underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV. Discussion

A.   Motion to Exclude Testimony

This Court has granted Columbia's motion for summary judgment based on the analysis below.   This judgment encompasses the information that has currently been conveyed through Hempel's report and his deposition testimony.   As the motion for summary judgment must be granted, even using Hempel's 2009 report, 2013 deposition testimony, and 2014 affidavit, the motion to exclude testimony is moot.

B.   Motion for Summary Judgment

1.   Use of Hempel's Testimony For Summary Judgment Consideration

As an initial matter, this Court finds that the plaintiffs' contention as to Hempel's testimony in conjunction with the requested pressure logs is without merit.  Hempel, to this point in the litigation, has only stated that there may be a potential link between Columbia and the leakage on the plaintiffs' property because of the proximity of Columbia's storage wells to the plaintiffs' property.   Further, Hempel has stated that he needs more information to formulate an opinion as to the cause of the leakage on the plaintiffs' property and that his opinion, as of January 2014, is incomplete without further information.   The

plaintiffs have requested, through a second set of interrogatories, pressure logs from Columbia which they argue would bolster Hempel's testimony and provide sufficient evidence to survive a motion for summary judgment.

Although the plaintiffs filed their second set of interrogatories requesting the pressure logs within the discovery period, such an action would have required a change in the expert disclosure provided to the defendants regarding Hempel and would have required an answer to those interrogatories after the discovery deadline. Federal Rule of Civil Procedure 26(a)(2) holds that:

> (A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
> (B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
> > (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> > (ii) the facts or data considered by the witness in forming them;
> > (iii) any exhibits that will be used to summarize or support them;
> > (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> > (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be
paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2).

Thus, the plaintiffs may not rely on the pressure log evidence to oppose summary judgment as this Court would have to presumptively find that the pressure logs would change Hempel's opinion. Such a finding by this Court would be speculative. This Court may not now allow the plaintiffs to request pressure logs which would then require a further expert disclosure. The expert disclosure deadline ended, at the latest date, on November 4, 2013. At that time, the plaintiffs would have been aware of what expert testimony would be offered by Columbia's expert and Chesapeake's expert. Further, Hempel had already requested more data in his 2009 report.

Additionally, in making a determination of what testimony should be considered, the Court should review the following factors: "(1) the explanation for making the supplemental disclosure at the time it was made; (2) the importance of the supplemental information to the proposed testimony of the expert, and the expert's importance to the litigation; (3) potential prejudice to an opposing party; and (4) the availability of a continuance to mitigate any prejudice." Tucker v. Ohtsu Tire & Rubber Co., Ltd., 49 F. Supp. 2d 456, 461 (D. Md. 1999). In this case, the plaintiffs assert that the late request for information to supplement Hempel's testimony was because counsel for the

plaintiffs had changed mid-way through the litigation and new counsel was having to learn belatedly the intricacies of this action. However, the change of plaintiffs' counsel occurred in January 2013. ECF Nos. 20 and 21. Thus, new counsel was involved in this action for almost eleven months before the expert disclosure deadlines passed. Further, the plaintiffs' counsel was aware that Hempel required more data to complete his analysis at the time of his 2009 report and counsel was made aware that the pressure logs were not public documents as early as July 2013. ECF No. 113 at 5. Thus, it is unclear why they did not request those documents which would have fulfilled, at least in some part if not fully, Hempel's 2009 request to acquire more data to complete his analysis.

As to the second requirement, as stated above, this Court would have to speculate as to the importance of the evidence to the testimony. Thus, this element is not in the plaintiffs' favor. Finally, as to the final two elements, the plaintiffs had an opportunity to file a motion to continue discovery deadlines or to continue expert disclosures as to Hempel. The plaintiffs did not do so. Given the movement in this case at this point, and the full briefing of the summary judgment, Columbia would be prejudiced by such a change in Hempel's testimony at this time.

Further, summary judgment is generally appropriate only after adequate time for discovery. <u>Evans v. Technologies Applications &</u>

Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996). "[S]ummary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Anderson, 477 U.S. at 250 n.5. However, "great weight [is placed] on the [Federal Rule of Civil Procedure] Rule [56(d)] affidavit, believing that a party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirements of Rule [56(d)] to set out reasons for the need for discovery in an affidavit." Evans, 80 F.3d at 961. The failure to file a Rule 56(d) affidavit, however, may be excused "if the nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit,' and if the nonmoving party was not lax in pursuing discovery." Harrods Ltd v. Sixty Internet Domain Names, 302 F.3d 214, 244-45 (4th Cir.2002)(quoting First Chicago Int'l v. United Exchange Co., 836 F.3d 1375, 1380 (D.D.C.1988)).

In this case, the plaintiffs have failed to file a Rule 56(d) affidavit to set out reasons why further discovery is needed to supplement Hempel's testimony. Although Hempel filed an affidavit, the plaintiffs have failed to do so as a party to this litigation. This too weighs in favor of this Court granting summary judgment despite the plaintiffs' assertions as to the need for more discovery. Additionally, the plaintiffs had ample time to complete discovery and were aware that the pressure logs were not publicly

distributed as early as July 2013. As such, the plaintiffs are not entitled to application of the exception that a Rule 56(d) affidavit must be filed, noted above, as they were not diligent in pursuing discovery.

Finally, this Court finds the plaintiffs' argument that Columbia's assertion that the disclosure would be untimely is without merit given that Columbia filed a motion for summary judgment after the deadline for such a motion passed in the vacated scheduling order. First, even if Columbia failed to comply with the scheduling order, "litigants are not excused from their obligations under the rules of procedure merely because an opponent has failed to comply with his obligations." Carr v. Deeds, 453 F.3d 593, 604 (4th Cir. 2006) (abrogated on other grounds by Sawyer v. Asbury, 537 F. App'x 283 (4th Cir. 2013). Further, the vacated scheduling order had indicated that dispositive motions were due on December 9, 2013. This Court vacated the scheduling order on December 6, 2013. Thus, Columbia's motion for summary judgment was not required to be filed by December 9, 2013 as that deadline had already been vacated. As such, this Court finds that it can only consider Hempel's testimony that has been provided to this point which includes his 2009 report, his 2013 deposition, and his 2014 affidavit.

## 2. Plaintiffs' Evidence is Insufficient

In Count I of the plaintiffs' complaint, the remaining count against Columbia, the plaintiffs allege that Columbia's storage wells leaked methane gas and other contaminants into the plaintiffs' water well. The plaintiffs assert that this occurred during Columbia's process of storing and producing gas at which time Columbia over-saturated its storage field.

In response to Columbia's motion for summary judgment, the plaintiffs contend that there is a genuine issue of material fact as to whether Columbia over-saturated its storage field or dropped the pressure so low as to create the fractures below the plaintiffs' well that were reported in Hempel's 2009 report. The plaintiffs argue that they do not have to show that Columbia's actions were the proximate cause of the damage to the plaintiffs but only that it was a proximate cause of the damage. The plaintiffs assert that Hempel's testimony at this time asserts that the gases could have intermingled and thus fingerprinting analysis done by Gorody and Chase (Chesapeake and Columbia's experts) is not reliable.

Columbia, on the other hand, argues that Hempel has been unable to testify as to saturation and thus his testimony as to that subject should not be admissible and the plaintiffs' argument is unsupported. Further, Columbia asserts that summary judgment must be granted as the plaintiffs cannot show by a preponderance of

the evidence that Columbia was the proximate cause of the damage to the plaintiffs' well. Columbia argues that the plaintiffs cannot do so because Hempel cannot conclusively say what is or is not a cause of the damage, Gorody concluded that the contaminant in the plaintiffs' water well is biogenic in origin and not related to gas production, and Chase concluded that the gas samples from Columbia and the plaintiffs' wells are different and thus Columbia cannot be the cause of the damage.

The West Virginia Supreme Court has applied the following burden of proof for a multi-defendant negligence action:

> [W]hile a plaintiff has the burden of proving that a defendant's breach of a particular duty of care was a proximate cause of his or her injuries, the plaintiff does not have to show that such breach was the sole proximate cause of the injury . . . . Accordingly, "'A party in a tort action is not required to prove that the negligence of one sought to be charged with an injury was the sole proximate cause of an injury . . . .'"

Spencer v. McClure, 618 S.E.2d 451, 455-56 (W. Va. 2005) (citing Mays v. Chang, 579 S.E.2d 561, 565 (W. Va. 2003)) (other citations omitted). However, the West Virginia Supreme Court has also explained that "the law is clear that a mere possibility of causation is not sufficient to allow a reasonable jury to find causation." Tolley v. ACF Industries, Inc., 575 S.E.2d 158, 168 (W. Va. 2002).

This Court finds that based on the West Virginia precedent cited above, the plaintiffs are correct that they were not required to show that Columbia was the sole proximate cause of the damage to

the plaintiffs' property.  On the contrary, however, the plaintiffs do have to show that there is more than a mere possibility of causation for this Court to allow the claim against Columbia to proceed.  Based on the evidence provided, this Court finds that the plaintiffs have not done so because Hempel's opinion at this time is incomplete and preliminary and it has not been shown that there is more than a mere possibility that Columbia was the source of the methane gas in the plaintiffs' well.

<ol type="a" start="1">
<li>Expert Reports</li>
</ol>

To reiterate, there are three main causation experts in this action:  the plaintiffs' expert, Hempel; Chesapeake's expert, Gorody; and Columbia's expert, Chase.

In Hempel's December 29, 2009 report, Hempel asserts that two potential causes for the leak must be considered: (1) drilling and fracking in the area and (2) Columbia's storage field.  ECF No. 103, Ex. 3 at 15-16.  Hempel further reported that he had not conducted fingerprinting and that it may be possible to complete fingerprinting of the gas in the well and then compare it to Columbia's gas samples to determine the source of the gas in the well.  Id. at 16.  Additionally, Hempel stated in his report, during his 2013 deposition and in his 2014 affidavit, that additional data was needed before a conclusive finding could be reached.  Id. at 16 and 21; ECF No. 103, Ex. 9 at 10, 14, 134; ECF No. 113, Ex. I at 3.  Finally, Hempel states that there is a

"likely possibility," a "possibility," or the "potential" that Columbia is a source of the gas in the well because of the proximity of Columbia's storage field. ECF No. 103, Ex. 9 at 10, 128, 141-142. However, he also states that the leakage was caused "most likely from drilling." Id. at 142.

Gorody, Chesapeake's expert, submitted two reports in 2010. Gorody reported that the gas found in the well was biogenic and not related to gas productions (not thermogenic). ECF No. 103, Ex. 5 at 1. He further found that the gas had not been altered by mixing or environmental degradation and that a potential source in the area is coal seam aquifers. Id. at 2-4. Gorody went on to report that the storage field, underground coal mining, or gas migrating or desorbing were all possible sources of the leakage. Id. at 5; ECF No. 103, Ex. 6 at 3. In conjunction with this report, the plaintiffs answered interrogatories related to the finding by Gorody that the gas in the well was biogenic. In their answers to the interrogatories, the plaintiffs admit that if Gorody's data is valid, the gas samples from Columbia's storage field are chemically distinct from the gas samples taken from the plaintiffs' water wells in 2009. ECF No. 103, Ex. 12 at Resp. No. 9. The plaintiffs have not provided evidence that Gorody's opinions are not valid.

The expert for Columbia, Chase, reported that the gas in the water well was from a biogenic source. ECF No. 103, Ex. 13 at 8. Further, Chase opined that Columbia's storage well was not the

19

source of the gas in the plaintiffs' well and that the plaintiffs have no explanation as to how Columbia's operations could have been the cause of the gas in those areas. Id. at 9-10.

b.    Application of West Virginia's Burden of Proof

Given the evidence in this case, the plaintiffs have failed to show that there is more than a mere possibility that Columbia was the source of the gas found in the plaintiffs' well. Hempel failed to provide a conclusive answer as to who he believed was the source or sources of the gas on the plaintiffs' property. Hempel was only able to opine that there was a possibility that Columbia could be a source because of the proximity of the storage field to the plaintiffs' property.

Further, both Gorody and Chase agreed that the gas in the well was biogenic in nature. Hempel, who was not given such material, was unable to provide an opinion as to those findings. Given the evidence that the gas was biogenic, and the plaintiffs' admissions that such a finding (if not disproved) would lead to a finding that Columbia was not the source, this Court finds that there is not a dispute as to the conclusion that the gas in the well did not come from Columbia's storage field or at the most that there is only a mere possibility that it did. The plaintiffs have not provided any evidence that Gorody's finding that the gas in the well was biogenic is false and thus cannot survive the motion for summary judgment.

Accordingly, this Court finds that the plaintiffs have failed to meet their burden of showing that there is more than a mere possibility that the source of the gas in the well was Columbia. Thus, their claim against Columbia cannot proceed to trial as there are no material facts in dispute.

V.   <u>Conclusion</u>

For the reasons stated above, the defendant Columbia Gas Transmission, LLC's motion for summary judgment is GRANTED (ECF No. 102). Further, the defendant Columbia Gas Transmission, LLC's motion to exclude testimony is hereby DENIED AS MOOT (ECF No. 101).

Further, it is ORDERED that the remaining parties appear by counsel for a status and scheduling conference on <u>September 29, 2014 at 1:15 p.m.</u> in the chambers of Judge Frederick P. Stamp, Jr., Federal Building, 1125 Chapline Street, Wheeling, West Virginia 26003.

Further, the Court will permit those out-of-town attorneys having their offices further than forty (40) miles from the point of holding court to participate in the conference by telephone. However, any such attorney shall advise the Court as soon as possible prior to the conference of his or her intention to participate by telephone and shall (1) inform all counsel of his or her appearance by telephone; (2) confer with other out-of-town attorneys to determine if they wish to appear by telephone; (3) advise the Court of the name of the attorney who will initiate the

conference call and all such attorneys appearing by telephone; and (4) initiate a timely conference telephone call with such attorneys to the Court at 304/233-1120 at the time of the scheduled conference. If the attorneys cannot reach agreement as to the initiator of the call, the Court will make that determination.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    September 2, 2014

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE